Stephen Hinsdill *v.* Henry Safford, John Sharp, Lemuel Morgan and Lorenzo Downs, Trustees of J. Whiton.

Bennington, *February,* 1839.

Since the statute of 1836, the maker of a negotiable note cannot be holden as the trustee of the payee, if the note has been indorsed to a *bona fide* indorsee, before due, though no notice of the transfer has been given to the maker before the trustee action.

A negotiable note, in the payee's hands, overdue, is to be considered the same as any other debt not negotiable. The maker will be holden, as trustee of the payee, unless he have notice of a transfer before the trustee action.

Where two were indebted, in the same sum each, for a purchase of the same person, and it was agreed that they were to give their joint note for both said debts, and one executed the notes, which were received by the creditor, and afterwards the other signed the notes, this is to be considered the same as if the latter had signed when the notes were first made.

This was a trustee process, and, on the trial in the county court, from the disclosures and other testimony, the following facts appeared. The writ, in this case, was served on the trustees on the 22d day of February, 1837. H. Safford, on the 31st of January, 1837, gave to J. Whiton, the principal debtor, a note for $525, payable to said Whiton, or order, in one year. This note was, by Whiton, indorsed to Marvin Freeman, for good consideration, on the 10th day of February 1837, but no notice of that indorsement was given to Safford until after the commencement of this action. John Sharp, on the 1st day of October, 1836, gave to Whiton a note for $304, payable to the latter or bearer, on the first day of January, 1837, on which he paid $117. On the 14th day of February, 1837, Whiton, for good consideration, under his hand and seal, made an assignment of his effects, including this note, to certain assignees, for the benefit of themselves and others, his creditors, but no notice of his assignment was given to Sharp, until after the service of the writ in this action.

L. Morgan & L. Downs executed to Whiton three notes, dated January 2d, 1837, one for $200, payable to him or order on demand, one for $250, payable to him or order in two years, and one for $200, payable to him or order in one year. These notes were executed in this way. Morgan and Downs were indebted to Whiton $325 each, on a purchase of land, and it was mutually agreed that they were to give their joint notes for the debts. Morgan executed the notes, and they were received by Whiton, who, on the 11th

day of February, 1837, for good consideration, indorsed and delivered the two last mentioned notes to Marvin Johnson, who, before the commencement of this action, notified Morgan and Downs of said indorsement, and afterwards, subsequently to the commencement of this action, said Downs signed said notes, pursuant to the original agreement. The first mentioned note, due on demand, was assigned by Whiton, in his assignment aforesaid, but no notice thereof was given until after the commencement of this action. The county court decided that the defendants were the trustees of Whiton, except as to the two last mentioned notes of Morgan and Downs. To which the defendants excepted.

*P. Smith,* for defendants.

I. By the act of 1836 the law merchant, as applicable to promissory notes, was adopted in this state, and a negotiable note, transferred before maturity, cannot be afterwards attached as the property of the payee. Chitty on Bills, 141, 145, 148, 154. *Ludlow* v. *Bingham,* 4 Dall. R. 47. 2 Swift's Dig. 738. *Eunson* v. *Healy,* 2 Mass. R. 32. *Britton* v. *Preston,* 9 Vt. R. 257. *Green* v. *Gillet,* 5 Day's R. 685.

II. The indorsement of a negotiable note vests the property in the indorsee.

III. The execution of the note by Morgan completed the sale to him and Downs, for which the note was given, and, as Downs was bound by his agreement to sign it, his doing so afterwards was the same in its effect as if he signed it at the same time with Morgan.

IV. The fact that some of the notes were overdue, when assigned, can make no difference in this suit, however it might be in a suit by the indorsee against the maker.

*J. S. Robinson* and *D. Robinson, jr.,* for plaintiff.

The question arising in this case has already been decided by the court in the case of *Britton* v. *Preston,* 9 Vt. R. 257, unless the repeal of the proviso to the act of 1797, 1 Comp. Stat. 146, should be adjudged to have altered the law in respect to notes executed since the repeal. Before the repeal of that proviso, the maker was protected in voluntary payments, made to the payee before notice of the assignment: and, since the repeal, he has been deprived of that pro-

tection.  This leaves the question of compulsory payment
under the trustee act, by virtue of a judgment and execution,
the same since the repeal as it did before.   Although in this
case no payment has been made by virtue of a judgment and
execution, yet the same consequences attach upon the service
of the trustee process as respects the rights of these parties.
For if it was necessary for the indorsee to give notice of the
assignment before the suit had ripened into a judgment and
payment under it, it would be equally so before the service
of the writ.   It is contended that if these trustees had paid
the amount of these notes by virtue of a judgment under
our trustee act, it would, by the 10th section of the act, be a
bar to a suit by the indorsee, and this consequence results
from the provision of the statute.  The most that can be
claimed from the repeal of that proviso is, that it leaves the
rights of the indorsee the same as they were at common
law.   An indorsee, who had paid value for a note, did not
acquire an indefeasible right at common law.   He could be
defeated of a recovery upon proof that the consideration of the
note was won at play or given upon an usurious considera-
tion.   These defences, being created by statute, are still rec-
ognized and enforced by our courts, notwithstanding the re-
peal of that proviso.   It will hardly be pretended that the
statute of usury, gaming, and the trustee act are repealed by
implication.

II. A part of these notes are claimed by the assignees of a
bankrupt, and it is well settled that they cannot prevent a reco-
very under the trustee act, even if they have given notice of the
assignment before the service of the writ.   *Ingraham* v. *Gey-
er*, 13 Mass. R. 146.   2 Kent's Com. 406.

The opinion of the court was delivered by

COLLAMER, J.—No one should be adjudged trustee, unless
the judgment would be a defence to any subsequent action,
which might afterwards be brought against him for the same
debt.   The statutes of 1797 and 1798, made up a congruous
and consistent system.   The statutes, directing the proceed-
ings against trustees, provided, that any debt, taken by judg-
ment from a trustee, should fully acquit him from any action
brought *by the principal debtor* therefor.   It is obvious that

this statute, standing alone, and unaided by any other, would not protect the trustee from an action brought *by an indorsee* of the principal debtor. The statute in relation to negotiable notes, (p. 144,) however, aided this. It provided that, when sued by an indorsee, the maker might not only have offsets of all debts due him from the payee *before notice of the indorsement,* but could give in evidence any thing which would equitably discharge him in an action by the payee. As a judgment, taking the debt from the signer as trustee, would equitably discharge him from the payee, he might, by the very words of this provision, give this judgment in defence, when sued by an indorsee, and therefore our courts sustained actions against a maker of a negotiable note as a trustee of the payee, until an indorsement and actual notice thereof to him. By the statute of 1836, this provision in relation to negotiable notes is repealed. It is now insisted that the legislature, by this act, did not intend to alter the law in relation to trustees. It may, perhaps, be much doubted whether the individual members of the legislature fully contemplated or intended all the consequences which must result from that act. But that cannot affect the law itself. By that act they have undoubtedly put all negotiable notes on the footing of mercantile paper in a commercial country. They have, by that act, therefore, though not so expressed, fully provided that as to negotiable notes, negotiated while current, the maker can apply no offsetts of debts due him from the payee, nor even payments actually made to the payee, if not indorsed on the note, nor can he be permitted to show entire fraud in, or total want or failure of the consideration, for which the note was given. The maker, therefore, when sued by an indorsee, who took the note while current, can no longer, in this case, make such defence as would discharge him from the payee, and, of course, cannot defend on the ground that he has been adjudged trustee of the payee. Therefore, he cannot be considered as his trustee. The note is vested in the indorsee by indorsement and delivery, and he may maintain an action without any notice to the maker. The maker, therefore, cannot be considered trustee of the payee after indorsement, whether he has been notified or not.

In relation to notes overdue, the law merchant is entirely

BENNINGTON
February,
1839.

Hinsdill
v.
Safford et al

different.   When a man  buys a note not yet due, he is to presume it is unpaid, and it would operate a fraud upon him to permit the maker afterwards to show that he paid any part before it was due.   If the note which is offered him is already due, he may well presume it is in whole or in part paid, or that it is so situated that it ought not to be paid, and he buys it at the risk of defence.   Hence, in mercantile phrase, a note not due is called *current*, that is, it *passes* in the market where the maker is known to be good.   If the note is overdue it is no longer *current*.   The indorsee, it is said in law, takes it, subject to all equities; for the maker may make any defence, which would discharge him as against the payee, accruing before notice of indorsement.   This will include all the former statute provided for, except offsets.— In relation, therefore, to negotiable notes overdue, the maker is to be considered trustee of the payee, until *notified* of indorsement, and if the trustee action be commenced after the note is due, and before notice of indorsement, it will be sustained.

Applying these principles to this case, Safford, whose note was indorsed while current, cannot be considered trustee of Whiton, though not notified of the indorsement.   John Sharp, whose note was not assigned until overdue forty-five days, must be holden the trustee of Whiton, as he was not notified of the assignment until after the commencement of this action.   As to Morgan and Downs;—When Morgan executed and delivered, and Whiton received the notes, they were binding on Morgan.   This extinguished the debt for land, and Downs was no longer debtor to Whiton for the purchase.   Morgan had given the notes, acting on the assurance of Downs that he would sign them.   It was like the case of *Pillans & Rose* v. *Van Mierop*, in Burrow.   An agreement to accept a bill is, in law, an acceptance.   Downs, therefore, very correctly signed the notes, agreeably to the contract, and its effect is the same as if signed at their date. Two of these notes were indorsed while current, and notice given before suit.   Of these, most clearly, the makers are

BENNINGTON,
  *February,*
    1839.

Hinsdill
    *v.*
Safford *et al.*

not trustees of Whiton.  Of the other note, due on demand, they are trustees,  as the same was not assigned until overdue, and no notice until after this action.

Judgment of the county court reversed, and judgment rendered according to this opinion.