LOREN GRISWOLD *v.* MARSHALL P. DAVIS.

*Promissory note. Collateral security.*

If a bill or note be assigned and delivered before maturity as collateral security for a debt, which is created at the time of the assignment, the assignee is a holder for value.

In such a case it is not necessary for the assignee to give notice of the transfer to the maker, except for the purpose of preventing the attachment of the note by the trustee process at the suit of the creditors of the payee; and if the maker, without notice of such assignment, and in good faith, pay the amount of the note to the payee, when it is not in the latter's hands, he will still be liable to pay it to the assignee.

If the maker of a negotiable promissory note does not find it in the hands of the payee, when it falls due, he should presume, as the law presumes, that it has been transferred, and pay it when and where he finds it. POLAND, J.

ASSUMPSIT upon a promissory note for two hundred and eighty dollars, dated August 21, 1854, signed by the defendant, and payable to Cornelius Russell, or bearer, in six months from date, with interest annually.

The case was tried by the court, at the January Term, 1858, of the Orange County Court, upon the following agreed statement of facts:

The defendant executed the note described in the declaration, to Cornelius Russell, who, on the 26th of August, 1854, obtained a loan from the White River Bank of two hundred and eighty

dollars, and gave his note of that date therefor, payable to the bank in three months from its date, and at the same time deposited in the bank the note of Davis, as collateral security for his own note to the bank.

On or about the 1st of February, 1855, the defendant called at Russell's house to pay his note. Russell was not at home, and the defendant paid to Russell's wife the amount of the note. On his return his wife handed him the money so left with her, informing him that it was left by the defendant in payment of the note. At this time the note was still in the bank. On the 13th of February, 1855, Russell paid to the bank two hundred dollars, which was then indorsed upon the note.

This note was afterwards transferred to the plaintiff by the bank for the purposes of collection.

Nothing but the two hundred dollars above mentioned was ever paid, either to the bank or the plaintiff, upon the note.

The defendant was not notified, and had no knowledge, that his note was in the bank, or out of Russell's hands, until after the commencement of this suit.

Upon these facts the county court rendered judgment for the plaintiff for the balance due upon the note, deducting the indorsement of two hundred dollars, to which the defendant excepted.

*William Hebard*, for the defendant, contended, 1st, that the bank, and, by consequence, the plaintiff, were not holders for value of the note, having received it only as collateral security, and, 2d, that the statute (acts of 1852, p. 4), in requiring notice of the transfer of a note to prevent its being trusteed upon the debt of the payee, by implication made a similar notice necessary to prevent a payment in good faith to the payee by the maker from being valid.

*A. P. Hunton*, for the plaintiff.

The plaintiff holds the note *bona fide* and for value ; *Palmer* v. *Richards*, 1 Eng. L. & Eq. 539 ; *Atkinson* v. *Brooks*, 26 Vt. 569.

Russell was neither the owner nor the holder of the note, and the defendant had no right to pay it to him ; Byles on Bills 162 ; *Milnes* v. *Dawson*, 3 Eng. L. &. Eq. 530.

Griswold *v.* Davis.

The defendant ought not to have paid the note without its being produced by the holder, and taking it up himself.

No notice of the transfer of a negotiable promissory note before maturity is required for any purpose by the law-merchant, and it is only made necessary by the statute of this State for the attachment of the note by the trustee process, as the property of the payee.

POLAND, J. · The real question in this case is, whether the White River Bank, by virtue of the transfer and delivery of the note of the defendant by Russell to them, under the circumstances stated in the case, acquired a legal right to hold the note, as against Russell himself.

The note at that time was a valid, negotiable note, with no pretence of any defence to it, even as against Russell, so that any transfer of the note that would be good as against Russell, would transfer a good title, and a right to recover against the defendant, and whether the transfer was for a valuable consideration or not, is not material, except in determining whether it was binding on Russell. A mere naked gift of a note to another, accompanied by delivery, is good against the donor, and would enable the holder to recover of the maker, if he had no defence to it prior to the transfer, and the donor would have no more right afterward to accept payment of the note in discharge of it, than if he had sold it for value; see *Milnes* v. *Dawson*, 3 Law & Eq. 530.

· There has been much discussion in the various courts of England and of this country, as to the effect of a transfer of a negotiable note or bill, while current, as collateral security merely, for a pre-existing debt in favor of the person thus receiving such bill or note against the party making the transfer, when such debt is not surrendered or discharged, whether such holder thus becomes a holder for value. But all those cases have been cases where the maker or acceptor of the note or bill, had at the time of such transfer, a valid defence to it against the party thus transferring it, and the question arose whether the holder by such transfer, acquired a right to enforce payment of the security when the party from whom he received it could not. In order to ena-

ble a party to recover upon a bill or note transferred to him, when the person from whom he received it could not, all the cases agree that he must be a holder for value, and without notice of the defence, and in order to make him a holder for value, he must have parted with some thing, or some right, upon the faith and credit of the security thus received.

There is a class of cases where the debt for which the bill or note was negotiated as collateral security, was created at the same time with the transfer of the paper, and in such cases, the fair and reasonable presumption is made, that the credit was given, or loan made, upon the security deposited; see *Palmer* v. *Richards*, 1 Eng. L. & Eq. 529 ; *Chicopee Bank* v. *Chapin*, 8 Met. 40.

The case at bar falls exactly within this class of cases, and the bank thus became strictly a holder of the note for value, and entitled to recover upon it as such.

In *Atkinson* v. *Brooks*, 26 Vt. 569, a bill current on its face was transferred by a party having no right to collect it, as collateral security merely, for a debt previously existing against himself, which was not discharged or surrendered, and no express agreement made to forbear the collection of it, and it was held by the court that the party thus receiving the bill became a holder for value, so as to be entitled to recover it of the acceptor.* This was held upon the ground that from the mere acceptance of a bill or note payable at a future day, as collateral security, the law would imply an agreement by the creditor to forbear the collection of the principal debt, until such collateral security should become due, and that such implied agreement to forbear, formed such a new consideration as made the creditor a holder for value.

Whether that case stands upon any sound foundation, either in principle or by the adjudged cases, it does not now become necessary to decide.

The bank having thus acquired a valid title to the note as against Russell, and being a holder for value also, as we think, were not obliged to give the defendant any notice that they held the note, in order to protect themselves against a payment to Russell.

The argument of the defendant is based mainly upon the ground

---

* But see *contra Austin* v. *Curtis & Walker, ante* p. 64. REPORTER.

that this note had not been *discounted* by the bank, so that if the defendant had been summoned as Russell's trustee, by any creditor of his, the defendant could have been held by such process, until notice from the bank to the defendant that they held the note.

It is not necessary to decide whether this note was protected against a trustee attachment before notice to the defendant by the bank, for if that were not so, we think it has no effect on the defendant's liability in this suit. A negotiable note is liable to be attached by trustee process against the payee, even after a transfer by him, if no notice has been given to the maker, because the statute expressly so provides, and to that extent has created a restriction upon the effect of such negotiation by the law-merchant. By the act of 1798, any defence to any note or bill which the maker or acceptor might have as against the payee, before notice of the indorsement, might be set up in an action by the indorsee of the same.

This clog upon negotiable paper continued in force till 1836, when it was repealed. After this repeal, it was held that the law-merchant applied to the fullest extent to all negotiable paper, and that if the maker of a negotiable note was summoned as trustee of the payee, while the note was in the payee's hands, still, if the note was not overdue the payee might transfer it, and that the holder would not be affected by the trustee attachment; see *Hinsdell* v. *Safford et al.*, 11 Vt. 309; *Little, Admr.* v. *Hale, Ib.* 482; *Hutchins* v. *Lyman and trustee*, 13 Vt. 541. These decisions effectually prevented the attachment of current negotiable paper. This produced the statute of 1841, which provided that negotiable paper should be subject to attachment by trustee process, until notice of transfer should be given, and this act still continues to be the law, with the modification made in 1852, excepting from its operation such paper as shall be discounted at any bank.

But these acts had no effect as to payments, or any other defences to such paper. These are left to be governed by the general rules of mercantile law applicable to negotiable instruments.

It is said that it operates as a great hardship to the parties liable upon such obligations, because without notice they have no means of knowing when or to whom they should pay, and they are

liable to suit without any means of preventing it, and it is claimed that they ought to be permitted to presume that the paper has not been negotiated, if they have not been notified of it; but this inconvenience is just what every man must incur who sets afloat a negotiable note or bill; and if he is not willing to do so, he must protect himself in advance by restraining its negotiability, and to hold that a payment before notice is a defence, would be to re-enact the act of 1798, which was long since repealed. In such a case, if the maker does not find his note in the hands of the payee when it falls due, he should presume, as the law presumes, that it has been transferred, and pay it when and where he finds it

The judgment below is affirmed.