The Union Trust Company of Pittsburgh, formerly the Union Transfer and Trust Company of Pittsburgh, Trustee of the Mercantile Library Hall Company, *v.* the Mercantile Library Hall Company, with notice to R. M. Gulick & Co., and the Pittsburgh Library Association, terre-tenants, and the Pittsburgh Library Association, an intervening defendant and appellant.

*Mortgage—Misdescription—Corporation.*

On a scire facias sur mortgage against a corporation an affidavit of defense, filed by another corporation intervening as a cestui que trust of the defendant, is insufficient, which avers such gross misdescription of the property as would deter bidders and, therefore, prejudice the interests of the intervening corporation as a beneficiary.

To concede that one who pledges and describes his own property as security for a loan, then when called on for payment denies to the lender his remedy, because of his own mistake in description, when the lender, the only one prejudiced, makes no complaint, would open a door to possible fraud on part of borrowers not warranted by any injustice, apparent or real, on the facts presented in this case. Per DEAN, J.

*Mortgage—Corporation—Ultra vires.*

A corporation which has executed a mortgage and received and applied the money to corporate purposes is estopped in a suit upon the mortgage from denying its power to execute the instrument, if it appears that there was no legislative prohibition against its execution.

A corporation in the position of a cestui que trust is bound by the act of its trustee, another corporation, although alleged to be illegal, where it appears that the first corporation was managed and controlled by men of affairs, who had knowledge not only of the legislation authorizing the mortgage, and the corporate action necessary to a proper execution of it, but also that it was through the efforts of some of the corporate members of the cestui que trust that the mortgage was placed.

Argued Nov. 11, 1898. Appeal, No. 220, Oct. T., 1898, by the Pittsburgh Library Association, from order of C. P. No. 3, Allegheny Co., Feb. T., 1898, No. 227, making absolute a rule for judgment for want of a sufficient affidavit of defense. Before GREEN, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Scire facias sur mortgage. Before DOTY, P. J., of the 10th judicial district, specially presiding.

The affidavit of defense was as follows:

William T. Lindsey, president of the Pittsburg Library Association, being duly sworn, deposes and says that said association has a full, just and legal defense to the plaintiff's claim herein, the nature of which defense is as follows: that the act of the Mercantile Library Hall Company, trustee of said association, in making and executing said mortgage, was (if said trust property was thereby intended to be mortgaged) illegal and void, and said act was ultra vires; that under the act of assembly of February 3, 1870 (the same being a supplementary act to the act incorporating said Mercantile Hall Company), the right of said Hall Company to incur any indebtedness was limited and restrained to the sum of $150,000, and it was, furthermore, expressly provided, that the said sum of $150,000 "shall be inclusive of the amount heretofore authorized;" that at the time the aforesaid mortgage was executed, the said act was, and is yet in force, and that no subsequent act of assembly has ever been passed enlarging the powers of said Hall Company with respect to the borrowing of money or contracting of indebtedness; that at the time said mortgage was executed there existed, and still exists, a prior indebtedness of said Hall Company of some $30,000 (the said prior indebtedness being secured by a mortgage to the Shields Estate, which said mortgage is of record in the recorder's office of this county, in mortgage book, vol. 58, page 95).

Deponent therefore avers that the said Mercantile Library Hall Company, having exceeded its lawful limit of indebtedness as fixed by said act of assembly, in executing and delivering said mortgage, that the act of said company in so executing and delivering the same was ultra vires, at least, as far as any right, title, etc., of the Pittsburgh Library Association could be affected thereby; and that said want of authority in so executing the same, made the same void and uncollectible.

Deponent further says that if these proceedings are intended to affect the property of which it is the beneficial owner, that the description thereof is so faulty and misleading that to allow a judgment to be entered herein, or a sale had thereon, would be a great wrong and injustice to said Pittsburgh Library Association, as intending bidders would be thereby deterred from and fearful of bidding on said property.

Part of section 6 of act of March 18, 1859, the original act of incorporation of the Mercantile Library Hall Company: That the corporation hereby created may borrow money to an amount not exceeding the sum actually paid in, and may issue its bonds therefor.

Section one of supplementary act of February 3, 1870: Be it enacted, etc., That the Mercantile Library Hall Company, of the city of Pittsburgh, is hereby authorized to borrow money to an amount not exceeding the sum of one hundred and fifty thousand dollars, and to pay interest therefor not to exceed the rate of seven per centum per annum; Provided, That the said sum of one hundred and fifty thousand dollars shall be inclusive of the amount heretofore authorized, and that the bond and mortgage heretofore executed by said Mercantile Library Hall Company bearing date of twenty-eighth June, sixty-nine, be and the same is hereby legalized and of full force and effect: Provided, that no bonds shall be issued for a less amount than one hundred dollars.

*Error assigned* was the order of the court.

*G. W. Williams*, with him *D. T. Watson, Johns McCleave, Alex. M. Neeper* and *Hilary B. Brunot*, for appellant.—On account of the error in the description of the mortgaged premises a judgment ought not to be allowed to be entered, as a sale thereof would, in all probability, prejudice and damage the just rights of appellant.

If a statute expressly forbids a corporation to make a certain contract the contract is void, even though not expressly declared to be so, and is incapable of ratification, and that the contract is void as unlawful may be pleaded by any one to an action founded directly and exclusively on the contract: Taylor on Private Corporations, sec. 297; Mercantile Library Hall Co. v. Pittsburg Library Assn., 173 Pa. 30.

*Thomas Patterson*, with him *George P. Hamilton, George Shiras, 3d, C. C. Dickey* and *W. K. Shiras*, for appellee.—No case has been cited where the courts have interposed to prevent the mortgagee from foreclosing and selling such title as he took under his mortgage. If he is unfortunate enough not to have

secured the entire title, he has, of course, paid the penalty of not having secured his debt. But he is not to be further visited with penalties by striking down his instrument altogether and refusing to allow him to proceed thereon at all.

Even if the indebtedness were ultra vires the corporation appellant cannot be heard to allege this fact when it has received and retains the money advanced under the mortgage which it now seeks to strike down: Wright v. Pipe Line Co., 101 Pa. 204; Fidelity, etc., Co. v. R. R. Co., 138 Pa. 494; Reed's App., 122 Pa. 565; Manhattan Hardware Co. v. Phalen, 128 Pa. 110; R. R. Co. v. Transportation Co., 83 Pa. 160; National Bank v. Matthews, 98 U. S. 621; Fritts v. Palmer, 132 U. S. 282; Leazure v. Hillegas, 7 S. & R. 313; Goundie v. Northampton Water Co., 7 Pa. 233; Gold Mining Co. v. Nat. Bank, 96 U. S. 640.

OPINION BY MR. JUSTICE DEAN, January 2, 1899:

On June 23, 1890, the Mercantile Library Hall Company executed to plaintiff on its property in the city of Pittsburgh, a mortgage in sum of $150,000 to secure the payment of one hundred and fifty $1,000 bonds bearing five per cent interest, within twenty years. The mortgage described the property as fronting on Penn avenue 160 feet, and running back 120 feet to an alley twelve feet wide, and situate in the fourth ward of the city of Pittsburgh. The Hall Company it appears owns but one property in that ward, which instead of fronting 160 feet on the avenue, has only 120 feet thereon, and instead of extending only 120 feet to a twelve feet alley, extends 160 feet thereto. Default having been made in payment of interest on the bonds secured by the mortgage, scire facias was issued. The Pittsburgh Library Association, alleging the Mercantile Library Hall Company, the mortgagor, was its trustee for the property, yet as such trustee was not acting in good faith in the management and preservation of it, asked to intervene as a defendant to the scire facias. A decree was made as prayed for. The Library Association then filed an affidavit of defense, in which it averred: 1. A gross misdescription of the property which would deter bidders, and therefore prejudice its interests as a beneficiary. 2. That the mortgage was illegal because there was no authority in the Mercantile Library Hall Company to

execute it.  A rule was taken to show cause why judgment should not be entered for want of a sufficient affidavit of defense, which after argument the court below made absolute, but filed no opinion.  Thereupon the Pittsburgh Library Association brings this appeal, assigning for error the decree of the court overruling both grounds of defense.

It is proper to notice at the beginning, that this is not a contention between the mortgagor and its alleged cestui que trust, this appellant.  The Union Trust Company issuing the scire facias, is the mortgagee and trustee for the bondholders, and it is alleged and not denied, that all the bonds are in the hands of innocent holders for value.  So that whatever may be the rights of the Library Association as against its trustee, we must treat the issue as between a mortgagor and mortgagee, which latter represents those who have invested their money on the faith of the security, and which money has been received and is retained by the mortgagor.

What is the plain legal right of the trustee of the bondholders?  Clearly no matter what the misdescription, it can proceed by scire facias to turn the land pledged into money.  If the description does not embrace all the land of the mortgagor, or all that was intended to be embraced, that is the trustee's business, not the mortgagor's.  The mortgagee has a clear legal right to sell what the mortgage does include; and the writ of levari facias to sell, must follow the description in the mortgage.  Whether equity would sustain a bill by the mortgagee to reform the mortgage because of mistake in description, it is a waste of time to inquire, for it does not ask such reformation.  The mortgagor and for the purposes of the argument, we treat the appellant as mortgagor, has no standing which warrants it in so asking.  To concede, that one who pledges and describes his own property as security for a loan, then when called on for payment denies to the lender his remedy, because of his own mistake in description, when the lender the only one prejudiced, makes no complaint would open a door to possible fraud on part of borrowers not warranted by any injustice apparent or real on the facts here presented.

As to the second averment of the affidavit, that the mortgage was executed without legislative authority, because a mortgage to the amount of only $150,000 was authorized by

act of February 3, 1870, to cover all the indebtedness of the company, while at the time there was a purchase money mortgage upon the property in the amount of $30,000 which was left unpaid, thus making more than $180,000, we think from the language of the act it is not by any means clear that it was not intended to authorize the $150,000 in addition to the purchase money mortgage. In 1865 the Mercantile Library Hall Company purchased from the Shields estate the Penn avenue property, paying part cash and executing a mortgage for $30,000; on April 15, 1869, an act was passed providing that the bonds heretofore authorized should not exceed the cash actually paid in; then came the act of February 3, 1870, authorizing the $150,000 mortgage, and providing that it shall include the amount heretofore authorized; that is, apparently that authorized by special act. No authority was needed to create the purchase money mortgage: the Hall Company by act of 1859 was authorized to purchase, hold and improve real estate for library purposes, and necessarily had power, it seems to us, to give a purchase money mortgage without the aid of either of the subsequent acts.

But assuming that by legislative language somewhat obscure, the authority to borrow $150,000 additional, was doubtful, the corporation, this mortgagor, will not be heard to raise the question of ultra vires. It assumed to have the authority to mortgage, received the money, and applied it to corporate purposes. "The law never sustains a defense of this nature out of regard for the defendant:" Wright v. Pipe Line Co., 101 Pa. 204; Reed's App., 122 Pa. 565, Fritts v. Palmer, 132 U. S. 282.

Appellant's counsel argue that the authorities cited and numerous others in the same line have no application to the facts before us, because the borrowing to the amount of $150,000 exclusive of the purchase money debt, was in effect forbidden by the act of February 3, 1870, and that the doctrine of estoppel cannot be invoked to bind a corporation to a contract forbidden by law. As before noticed it is by no means clear that the authority to borrow $150,000 was not intended to be exclusive of the purchase money mortgage; but assume appellant's construction of the act, that the amount was intended to embrace the entire mortgage indebtedness, it was, at most, affirmatively a grant of authority to borrow only $150,000 on mortgage;

that amount it did borrow, not in the face of a prohibition, for there is none in the act, but by the assumption of authority it did not have; placing it in the class of acts ultra vires to which the authorities apply.

It is further argued that the Pittsburgh Library Association, the alleged cestui que trust, is not bound by the illegal act of its trustee. Whatever might in equity be the position of some beneficiaries, such as minors, femes covert, lunatics and others, under a trust, we think this cestui que trust has but a frail foundation on which to raise this plea. It is a corporation managed and controlled by men of affairs, who had knowledge not only of the legislation authorizing the loan, and the corporate action necessary to a proper execution of the mortgage, but in its bill of complaint against its trustee in the equity suit argued herewith, avers, that it was through the efforts of some of its own corporate members that this mortgage was placed, and the indebtedness of the Mercantile Hall Library Company refunded. It hardly becomes appellant, now, seven years after the execution of the mortgage, to plead it is not bound by the acts of its trustee in which it took such a prominent part.

The judgment is affirmed.