# American Surety Co. of New York, Appellant, v. Vandegrift Construction Co. et al.

*Attachment execution—Settlement of accounts—Evidence—Payment—Overpayment—Fraud.*

1. On an attachment execution, a judgment on a verdict in favor of the garnishee will be sustained, where it appears that the defendant, a contractor, was building a railway for the garnishee; that, on a settlement of accounts between defendant and garnishee

one week after the attachment was issued, it was discovered that the defendant, who had been paid for his work in bonds, had received by mistake or inadvertence $17,500 of bonds in excess of what was due him; that the bonds had been delivered to defendant without strict regard to estimates, as the work progressed, in order to facilitate their sale; and that these particular bonds had been delivered to defendant before the attachment issued, but that the credits therefore, by defendant's direction, had not been made until after that date.

2. In such a case the plaintiff cannot contend that since the bonds were given defendant, they belonged to him, and not to the garnishee, and that after the attachment was served, neither the status of such securities nor the proceeds from the sale thereof, could in any manner be changed by a settlement of the accounts between the defendant and garnishee in which plaintiff took no part.

3. The real question was whether the garnishee owed defendant anything when the attachment was served. If, at the time, defendant was overpaid, and a balance of the account was due the garnishee, an adjustment in good faith of that balance, even after the date of the attachment, by paying back the proceeds from the sale of the bonds inadvertently advanced, could not make the funds thus received by the garnishee subject to the attachment, for these bonds, in reality, never belonged to defendant.

4. On an attachment execution, where a traction company for which the defendant, under a contract, is building a railway, is served as garnishee, a claim that an initial payment in cash to which defendant was entitled under the contract, had not in fact been paid to him by the garnishee, is not sustained by evidence to the effect, that the check for that amount, of a railway company, with whom defendant had also a construction contract, was given to the traction company, the garnishee, which on the same day, gave its check to defendant for a like amount, and this or the latter's check for the same amount, was given to the railway company; that all these checks were drawn upon the same company; and that the total capital stock of the garnishee amounted exactly to the amount represented by the checks. Such evidence shows that the railway company had either actual cash in bank or sufficient credit to meet the check given to the garnishee, and that upon the deposit of such check the latter had an adequate balance to its credit, when it made the payment to defendant in absence of allegation or proof of fraud.

*Evidence—Expert testimony—Books of account.*

5. Where the journal of a corporation is produced in evidence at the trial of a cause, but no other books of the corporation are

offered, the trial judge commits no error in refusing to permit an expert bookkeeper to express an opinion as to what the journal entries indicated. If the other books had been produced, they might well have explained the meaning of the journal entries.

*Practice, C. P.—Charge—Points—Evidence.*

6. A point for charge is properly refused where neither the evidence produced, nor that tendered, sustains the facts set forth in the point.

Argued Feb. 17, 1919. Appeal, No. 2, Jan. T., 1919, by plaintiff, from judgment of C. P. Lebanon Co., June T., 1915, No. 11, on verdict for garnishee, in case of American Surety Co. of New York v. Vandegrift Construction Co. and James N. Vandegrift and Joseph A. Vandegrift, defendants, and Ephrata & Lebanon Traction Co., Garnishee. Before BROWN, C. J., STEWART, MOSCHZISKER, WALLING and KEPHART, JJ. Affirmed.

Attachment execution. Before HENRY, P. J.

Verdict and judgment for garnishee. Plaintiff appealed.

*Errors assigned* were various instructions and rulings on evidence.

*Wm. Y. C. Anderson,* with him *Warren G. Light,* for appellant.—Where the attachment execution is duly served, it puts the attaching creditor in the same relation to the garnishee as was occupied by the defendant before the attachment was laid: Fessler v. Ellis, 40 Pa. 248; Myers v. Baltzell, 37 Pa. 491; Coles v. Sellers, 1 Phila. 533.

An attachment execution binds all moneys which may come into the garnishee's possession from the date of service until judgment, even though the writ is not served on the defendant until after an assignment by him to the garnishee of the property attached: Rutter v. Ely, 4 Kulp 348; Myers v. Baltzell, 37 Pa. 491; Ege v. Koontz, 3 Pa. 109.

From the foregoing authorities it is plain that the appellee's act in demanding and accepting from the defendant either its own mortgage bonds or their agreed value, after the appellant's attachment had been served, was in contravention of its duties as a garnishee: Glazier v. Jacobs, 250 Pa. 357.

That the appellant, under the extraordinary conditions involved here, should have been permitted to prove the origin, progress and ultimate destination of the $34,000 in question, is established by the case of Glessner v. Paterson, 164 Pa. 224, followed in Van Sciver v. McPherson, 199 Pa. 331.

The attachment now before the court substituted the appellant for the defendant so far as any change thereafter of the latter's rights was concerned, and these rights are not changed because corporate obligations form the subject-matter of the litigation: First Nat. Bank of Bangor v. American Bangor Slate Co., 229 Pa. 27.

*Henry O. Evans,* of *Evans, Noble & Evans,* for appellee.—The attaching creditor stands in the same relation to the garnishee as was occupied by defendant before the attachment was laid: Fessler v. Ellis, 40 Pa. 248.

Appellee, as garnishee, has all the rights of set-off, defalcation or defense which arose from the relations existing between Vandegrift and appellee, at the time of the service: Myers v. Baltzell, 37 Pa. 491.

An execution attachment does not change the relations with which it interferes further than to transfer the rights of defendant which result from those relations: Myers v. Baltzell, 37 Pa. 491; Pennell v. Grub, 13 Pa. 551.

OPINION BY MR. JUSTICE MOSCHZISKER, March 24, 1919:

March 4, 1915, the American Surety Company of New York, plaintiff, a judgment creditor of Joseph A. Van-

degrift, the defendant, issued an attachment execution, summoning as garnishee the Ephrata & Lebanon Traction Company, and another corporation, hereinafter referred to as the "railway company."

The attachment was duly served, and the Ephrata & Lebanon Traction Company (with whose case alone we are concerned on the present appeal) answered, denying it held any property or owed any debts to defendant. When the matter came to trial, the jury found a verdict in garnishee's favor, upon which judgment was entered, and plaintiff has appealed.

Defendant was engaged as a contractor in the construction of a street railway for the garnishee when, in an effort to collect a ten-year-old judgment, which plaintiff held against defendant, the present attachment issued. As a result, defendant, being unable to finance his contract, withdrew therefrom, and, at a settlement of accounts between him and the garnishee, which occurred March 11, 1915, it was discovered that he had been overpaid, in bonds of the latter, some $17,500. In other words, by the terms of the contract between defendant and garnishee, the former was entitled to receive from the latter, for work completed up to date of service of attachment, some $126,800, whereas, through inadvertence, he had been paid, in round figures, $144,300. So that the garnishee not only held no property or credits of defendant, but, on the contrary, he owed it the amount of the overpayment; which was refunded by the brokerage firm that had charge of marketing garnishee's bonds, transferring from defendant's to garnishee's account credits from the sale of these securities, amounting to $15,312.50, the bonds having been sold at defendant's orders prior to the attachment, although the transfer of credits (which likewise was made at the latter's direction) did not take place till after that date.

In explanation of the overpayment, one of garnishee's officers testified that to dispose advantageously of bonds, such as those under discussion, they must be sold in size-

able lots, within a comparatively short time. This witness suggested the bonds in question were paid defendant without strict regard to estimates, or work actually done, in order to get them on the market in such lots, "when the money would be paid out on construction work as it went along"; and that, in following this course, the overpayment inadvertently occurred.

Plaintiff contends that, since the bonds were given defendant, they belonged to him and not to the garnishee, and, after the attachment was served, neither the status of such securities nor the proceeds from the sale thereof could in any manner be changed by a settlement of accounts between defendant and garnishee in which plaintiff took no part; therefore, when either the bonds or their proceeds\were paid back to the garnishee, they were defendant's property and, as such, immediately became subject to the previously levied attachment.

The real question upon which this branch of the case turns, however, is: Did the garnishee owe defendant a balance on the contract when the attachment was served? If it did not, then nothing in its hands became bound by the attachment; and (if as a matter of fact defendant was at that time overpaid), the balance of the account being due to garnishee, an adjustment, in good faith, of that balance, even after the date of the attachment, by paying back the proceeds from the sale of bonds inadvertently advanced to defendant, could not make the funds thus received by the garnishee subject to the attachment, for those bonds, in reality, never belonged to defendant.

The facts on all the issues involved in the accounting between the parties, and the good faith of the repayment by defendant of the balance due the garnishee, were submitted to the jury and found in favor of the latter. The trial judge, summing up the issues in hand, said: "All this testimony has a bearing only upon whether the garnishee received these $17,500 in bonds, or the proceeds of these bonds, or a credit for the proceeds, at a time

when Vandegrift did not owe them anything. If Vandegrift had been overpaid he owed them that overpayment. Now, if this amount was simply paid back to square that overpayment, then your verdict should be in favor of the garnishee in this case. On the other hand, if it was not paid back to square that overpayment, and if either these bonds, or the proceeds, or any part of the proceeds legally belonged to Vandegrift at the time of the attachment, or subsequent thereto, and were in the hands of the garnishee at the time of the service of the attachment, or subsequent thereto, then your verdict should be in favor of the plaintiff." This practically covers what was repeated in answers to points, also complained of; and we see no error therein.

Many of appellant's assignments criticize rulings, adverse to plaintiff, upon offers of testimony, and instructions to the jury, concerning the first payment made by garnishee to defendant on the contract.

In connection with this payment, amounting to $34,-000, it appears that the railway company (with whom defendant also had a construction contract, and who likewise was served as a garnishee) had close business relations with the garnishee in this case. The contract between garnishee and defendant provides that the latter shall be paid a consideration of $169,625 "consisting of $34,000 in cash and $155,000 of the company's first mortgage......bonds at a price of 87½," these payments to be made on "semi-monthly estimates of the proportionate amount of work performed, material and equipment delivered." Before any substantial work had been done, this first payment of $34,000 was made by garnishee to defendant, in the following manner: August 3, 1914, a check of the railway company for $34,000 was given to garnishee, who, on the same day, gave its check to defendant for a like amount; and this, or the latter's check for a similar amount, was, on August 5, 1914, given to the railway company. All these checks were drawn upon the same trust company; and, from such

fact, together with the further circumstance that the total capital stock of the garnishee amounted to exactly $34,000, plaintiff contends it could justifiably be found that this alleged first payment to defendant was "not in fact made"; and, hence, he insists that, in settling the accounts between garnishee and defendant, the sum of $34,000 ought to be deducted from the payments which the former claims to have been made to the latter. If this course were pursued, it would leave a considerable sum due and owing by garnishee to defendant, at the date of the attachment.

To "attack the genuineness" of this alleged first payment, plaintiff offered to show that, when the railway company gave the original check for $34,000 to garnishee, the former did not have any such amount on deposit, which offer the trial judge refused, together with other evidence relating to the facts stated by us in the last paragraph; but, accepting all these facts as though proved, since, at the time of the transaction in question, garnishee had no knowledge of the debt due by defendant to plaintiff, or that defendant was indebted to any-one, and since there was no formal allegation or offer to show that the circumstances attending the initial payment of $34,000 were either fraudulently conceived or put into execution for the purpose of defrauding plaintiff, or other creditors of defendant, such facts, even if proved, would not have been in themselves sufficient to sustain a finding that the payment of $34,000 had not actually been made; and no other facts were either shown or tendered which, when taken with the testimony refused, would sustain a finding to that effect.

True, the parties concerned in the initial payment made a departure from the contract terms at that time, in that such payment undoubtedly represented an advance to defendant for work which the estimates did not show to have been done then; but, in large operations, such departures are often made for the convenience of all concerned, and, therefore, this circumstance cannot

be given the significance which plaintiff would attach to it; nor would the fact, if true, that actual money did not pass, have any special significance, for everyone familiar with financial affairs knows that most of the large business of the world is transacted by a system of credits. Here it was shown that the railway company had either the actual cash in bank or sufficient credit to meet its draft of $34,000, when the check was given to garnishee, and that, upon the deposit of such check, the latter had an adequate balance to its credit when it made the payment to defendant.

The garnishee's journal was in court, under subpœna, and defendant called an expert bookkeeper "for the purpose of showing that the journal entries relating to the $34,000 transaction indicate there was no [such] payment made to Joseph A. Vandegrift." The court refused this offer; and subsequently, in vindication of its ruling, stated: "The offer of the opinion of the expert was rejected for the reason that there was nothing before the court which was the subject of opinion evidence; the books of the company, with one exception, were not called for or offered, and these books might well have explained the entries and transactions to which they related without the opinion or conclusion of any expert." In this we see no error.

Plaintiff also attacks parts of the charge wherein the trial judge referred to the books of the garnishee as being carelessly kept, but stated that the latter was not in court to answer for "improprieties or irregularities in its bookkeeping except in so far as they might have a bearing upon the question of whether these bonds, or the proceeds of these bonds, or any part thereof, belonged to Vandegrift and reached the hands of the traction company, subsequent to time of service of attachment"; this, in substance, is all of importance that the trial judge said to the jury upon the subject in hand, and it does not present reversible error.

Finally, appellant complains that the court erred in refusing to affirm this point: "If the jury believe that the accounts of the Ephrata & Lebanon Traction Company, as between itself and Joseph A. Vandegrift, as contained in the journal of the said Ephrata & Lebanon Traction Company, are not true and correct in every material particular, and that such material entries were made for the purpose of fabricating evidence in its behalf and against the plaintiff's interest, the jury is justified in disregarding the defenses of the garnishee of either overpayment to Joseph A. Vandegrift, or of set-off against Joseph A. Vandegrift and the plaintiff." Since neither the evidence produced nor that tendered would sustain the findings set forth in this request, it was properly refused.

None of the authorities cited by appellant rules the facts at bar, nor is any novel point of law raised which requires discussion. We have disposed of all the important questions in the case; since they are treated by us as though every material fact offered in evidence had been actually established by competent proof, it is not necessary to pass specifically upon the many assignments which complain of the refusal of testimony; and, as to those which criticize the charge, keeping in mind what has already been said upon that subject, it is only necessary to state we see no material error therein; in conclusion, the complaint that the court below erred in refusing plaintiff judgment n. o. v. is entirely without merit.

The judgment is affirmed.