## Duffy, Appellant, *v.* 58th & Chester Avenue Building and Loan Association et al.

Argued December 11, 1935.

Before Keller, P. J., Cunning-
ham, Baldrige, Stadtfeld, Parker, James and Rhodes,
JJ.

*Ralph B. Umsted,* with him *John R. Umsted,* for appellant.

*Philip Werner Amram,* with him *Wolf, Block, Schorr & Solis-Cohen,* for Integrity Trust Company, appellee.

OPINION BY JAMES, J., April 27, 1936:

The important facts agreed upon by the parties to this controversy in a case stated are as follows:   On June 24, 1931, the Banking Department of the Commonwealth of Pennsylvania issued an order segregating dues paid into the Fifty-eighth and Chester Avenue Building and Loan Association on account of free shares after that date.   On January 19, 1933, the building and loan association, by its directors, appointed three liquidating trustees to liquidate its affairs and wind up its business.   On June 21, 1933, the banking department ordered the dues collected by the association after June 24, 1931, and segregated under its order, to be refunded.   On November 3, 1933, Helen M. Duffy, a non-stockholder, obtained a judgment for $2,896.23 against the association for municipal taxes which she paid and for which the association was liable.   The Integrity Trust Company was served as garnishee with an attachment issued upon the Duffy judgment on April 14, 1934, and the liquidating trustees of the association on May 5, 1934.   When the attachment was served on the trust company, there was on deposit, subject to the attachment, $656.54.   On June 4, 1934, a certificate of possession by William R. Smith, Deputy Secretary of Banking, as receiver of the association, was filed in the Court of Common Pleas No. 3 of Philadelphia County.   On September 17, 1934, by order of the court of common pleas No. 3, Helen M. Duffy was authorized to proceed with the attachment against

the Integrity Trust Company as garnishee. The association is indebted to the Integrity Trust Company in the sum of $15,094.21 with interest from August 31, 1933, which is a balance due on promissory notes all of which became due in January 1933. All of said notes were straight promissory notes without collateral loan provisions except a note dated March 16, 1927 for $3,800 payable on demand, which had been reduced by payments to $2,094.21 on the date of the attachment. On April 17, 1934 a credit of the deposits on hand was applied on the note. Among other provisions, the note provided: "...... it being further understood and agreed that the holder shall have a like lien upon any and all funds, stocks, bonds, notes and other property at any time in the hands of said holder belonging to the maker ...... as security for this note ......" On May 8, 1934, W. LeRoy Hart, secretary of the association, by letter, requested the trust company to accept delivery from the Home Owners Loan Corporation of $550 in HOLC 4 per cent bonds due July 1, 1951, on behalf of the association. On May 14, 1934, the trust company received the bonds on account of the association and advised it by letter that it had appropriated the bonds on account of the indebtedness of the association to the trust company, and applied a credit of $561.22—the amount realized on the sale of the bonds—on the overdue interest and principal of the obligation. Helen M. Duffy asked judgment against the trust company garnishee for the amount on deposit and the proceeds of the bonds. The court below entered judgment in favor of the Integrity Trust Company for both amounts. From this judgment, Helen M. Duffy, attachment creditor, has appealed.

Appellant's first contention is, that the provision of the collateral note, which provides that the holder shall have a lien upon any assets of the maker in the hands of the holder, is in violation of the Act of June 25,

1895, P. L. 303, and therefore not enforceable. By the Act of June 2, 1891, P. L. 174, building and loan associations, under certain circumstances, had the right to make temporary loans, "and secure the payment of the same by note, bond or assignment of its judgments and mortgages as collateral ......," which act was amended by the Act of 1895, supra, to read "and secure the payment of the same by interest bearing order, note or bond as collateral ......" Appellant contends that by the omission of the words "assignment of its judgments and mortgages" building and loan associations were prohibited from pledging their assets as collateral for the payment of a debt. By the omission of these words, Attorneys-General Carson and Brown, by opinions reported in 14 D. R. 879; 27 D. R. 668, and 27 D. R. 721, advised that mortgages and judgments could not be used by building and loan associations as collateral for borrowed money. It appears that the present note was authorized by proper resolution of the association and executed by its proper officers, and no assignments of its judgments or mortgages were used as collateral. The act provides that payment of the loans was to be secured by interest bearing order, note or bond as collateral; but does not prescribe the form of such order, note or bond, whether in the ordinary form or one containing a confession of judgment, or one providing for a lien upon assets of the association that may come into the possession of the holder of the obligation. The act does not prohibit the making of the note and the strongest inference that may be drawn by the omission of the language in the Act of 1895 is that the legislature intended to prevent the association from pledging any of its judgments and mortgages. There is no prohibition respecting any other assets. Assuming, however. that the association had no authority to execute a note granting to the holder a lien' upon assets in the holder's possession, it could not avail

itself of such acts as a defense where a contract has been entered into and executed in good faith by the other party and the corporation has received the benefit of the performance: Ketchum v. Conneaut Lake Co., 309 Pa. 224, 163 A. 534. Under these circumstances, the association will not be permitted to raise the question of ultra vires: Union Trust v. Mercantile Library Hall, 189 Pa. 263, 42 A. 129. In Cameron v. Christy, 286 Pa. 405, 133 A. 551, where the question was raised as to the right of a trust company to pledge certain securities to secure deposits, the court said: "Furthermore, the corporation secured the benefits derived from the deposit and cannot now escape its burdens by setting up a plea that it acted beyond the scope of its powers. 'The rule of law is the same with corporations as with individuals. Neither can retain the profits of a transaction, or anything of value received from the other party thereto, and set up ultra vires as a defense to the enforcement of the contract. To do so would be unconscionable, and is therefore impossible in a court of equity. He who seeks equity must do equity. The cases are legion, and from many courts, in which this sound rule of equity and common honesty has been enforced' ...... 'A corporation may not avail itself even of ultra vires as a defense where a contract has been entered into and executed in good faith by the other party and the corporation has received the benefit of the performance.' " If the defendant cannot avail itself of this defense, neither can the plaintiff as the rights of an attaching creditor cannot rise higher than those which defendant had against the garnishee, and the liability of the latter is measured by his responsibility in case the debtor himself had brought an action to recover it: Austin-Nichols & Co. v. Union Trust Co., 289 Pa. 341, 137 A. 461; Knight v. Red Ball Transit Co., 306 Pa. 371, 159 A. 715. Aside from the lien provided by the note, the garnishee would have

the right of set-off by operation of the defalcation statute.

Appellant further argues that the garnishee bank had no right to appropriate funds of the association because the Act of 1895 provides that "said loans to be repaid out of the accumulations in the treasury, as soon as sufficient is paid in and there is no demand therefor by borrowing stockholders." This provision is solely advisory as to the association and cannot be construed as restricting the holder of a note to accumulations for the repayment of the loan. No question is raised by the association or the receiver that either of the funds in the bank's hands was not liable for the debts of the association, and if the garnishee had the right of set-off, it is entitled to the funds.

Appellant's right to attachment execution is based upon the Act of June 16, 1836, P. L. 755, sec. 22, 12 PS §2113, providing: "The stock owned by any defendant in any body corporate, also, deposits of money in any bank, or with any person or body, corporate or politic, belonging to him, and debts due to him, shall be liable to execution, like other goods or chattels subject nevertheless to all lawful claims thereupon, of such body corporate, or person." In passing upon the rights of an attaching creditor and the garnishee, we quote from the recent case of Aarons v. Pub. Ser. B. & L. Assn., 318 Pa. 113, 116, 178 A. 141, which involved the right of a garnishee bank to set off a debt due by the defendant against deposits. In the court's opinion Justice LINN stated: "Plaintiff must conform to the statute conferring the right. When he demands his judgment out of 'deposits of money in any bank,' or of 'debts due to him' by the bank, he must show there is a debt 'belonging to' defendant; the right to execution on debts, or deposits of money, is expressly limited to be 'subject nevertheless, to all lawful claims thereupon, of' the bank.

"On August 19, 1932, when the writ was served, it could only attach the deposit or debt, subject to the bank's claim, and, as that claim extinguished defendant depositor's right to draw on the deposit, leaving nothing 'belonging to' defendant, plaintiff took nothing by its writ; the larger debt to the bank had extinguished the smaller deposit credit by operation of law. The bank was not required first to make book entries charging one account and crediting the other before asserting its right to priority: Goldstein v. Jefferson Title & Trust Co., 95 Pa. Superior Ct. 167. If subsequently challenged, as here, the bank was only required to show that it had a 'lawful claim' when the writ was served; unless allowed to show and rest on that, it would be deprived of the benefit of the statute and the plaintiff would get more than the statute granted. The garnishee is not limited to showing that it once had a claim which, before the writ was served, was collected by a bookkeeping entry. To adopt plaintiff's interpretation, would render the 'subject' clause nugatory." This we believe to be determinative as to the garnishee's right to set off the deposits in the bank. See also Melnick B. & L. Assn. v. Melnick, 318 Pa. 120, 178 A. 144; Bergman B. & L. Assn. v. Blaul, 318 Pa. 126, 178 A. 140. It is earnestly argued that a distinction should be made between funds on deposit at the time of the service of the attachment and the funds which were realized from the sale of HOLC bonds, relying upon Frazier v. Berg, 306 Pa. 317, 159 A. 541, which held that "in attachment execution proceedings, the process binds all property belonging to the defendant or money due him in the hands of the garnishee which the latter receives up to the time of the trial." In the opinion by Justice SCHAFFER, sustaining this rule, we find no language which modifies the fixed rule that the plaintiff's rights shall be "subject nevertheless to all lawful claims thereupon of 'the garnishee.'" It

will be noted that at the time of the service of the attachment, the defendant was indebted to the garnishee on a note then due and owing.

Considerable of the discussion by Justice SCHAFFER, in Frazier v. Berg, supra, related to the sums of $10,000 and $7,500 respectively, both of which were received by the garnishee subsequent to the service of the attachment and the filing of the answer. In disposing of these items, the court said: "In view of the court's instruction that the attachment did not bind the funds coming into the hands of the garnishee down to the time of trial and the lack of full explanation as to the indebtedness of defendant to the garnishee and as to the two payments of $10,000 and $7,500, we conclude that a new trial must be granted on plaintiff's appeal ......" The "full explanation as to the indebtedness" and "as to the two payments" related to whether the obligations, upon which the garnishee was an endorser, were due when the payments were made and whether such payments had been applied or appropriated. Inferentially, we draw no other conclusion from the language of the opinion than that if at the time the money was received the garnishee had a lawful claim, said money could be appropriated to the lawful claim. This principle was recognized in American S. Co. v. Vandergrift C. Co., 264 Pa. 193, 107 A. 733, where it was held that when the garnishee, after service of the attachment, received from the defendant proceeds of bonds mistakenly or inadvertently advanced in excess of what was due the defendant, such proceeds were not subject to attachment. If appellant's contention is correct, it would necessarily follow that any payments made by defendant to the garnishee, even upon its own obligations, would have to be held for the benefit of the attaching creditor. This we believe unsound and not in accordance with the equitable right of set-off. The question involved has rarely arisen, and the only case

in other states directly in point is Mutual Reserve Life Ins. Co. v. Fowler, 2 Ga. App. 537, 59 S. E. 469, where the following rule was laid down: "The true rule is that a garnishee, if a debtor be indebted to him, has a lien on funds coming into his hands or future indebtedness to the debtor on his part superior to that of the plaintiff in garnishment. He is entitled to pay himself before he is required to collect for the benefit of others; and this applies to any past indebtedness due him by the defendant."

Although we find no direct authority in our State, we are persuaded the correct rule to be that the garnishee has the same right of set-off with respect to after acquired assets as it has with respect to assets in its possession at the time the writ is served.

Judgment affirmed.

DISSENTING OPINION BY KELLER, P. J.:

Judge CUNNINGHAM, Judge RHODES and I dissent from the opinion of the Court as respects the funds of the defendant which came into the hands of the garnishee after the service of the attachment.

As was clearly pointed out by Mr. Justice LINN in Aarons v. Public Service B. & L. Assn., 318 Pa. 113, 118, 178 A. 141, the garnishee's right of priority over an attachment served upon it arises from our statutes permitting defalcation; and this right of defalcation is a present or immediate one; that is, the debt due the garnishee by the defendant in the attachment must be due and demandable when the attachment is served, or the garnishee may not defalcate it against the funds of the defendant in its possession. And the converse is also true. The garnishee cannot defalcate its claim today— when the attachment is served—against funds of its debtor coming into its possession tomorrow, so as to have priority over an attachment served today, which however binds money of the defendant coming into the

hands of the garnishee after the attachment is served (Frazier v. Berg, 306 Pa. 317, 159 A. 541).

The right of defalcation by the garnishee—as respects priority over an attachment duly served—is fixed by the status when the attachment was served; and it can be applied, in priority to an attachment duly served, only to the extent that the defendant's debt to it is then due and demandable, on the one hand, and only against funds of the defendant in its hands when the attachment is served, on the other.

Had the defendant given the garnishee the HOLC bonds with directions to sell and apply the proceeds to its indebtedness the attachment would not have bound the money so received. But the garnishee having received the bonds for sale only, they remained the property of the defendant and the attachment bound them and the proceeds from their sale.