# D. B. Martin Company, Appellant, *v.* Strickler.

*Debtor and creditor—Payment—Receipt—Presumption—Acceptance of a third person's obligation for a pre-existing debt.*

1. Where a creditor takes from his debtor the obligations of a third party the presumption is that such obligations are accepted only as a collateral or further security for the antecedent debt.

2. Where the creditor receipts for these obligations "for payment

of" the pre-existing debt, the receipt is not prima facie evidence of absolute payment of the debt.

*Corporations—Sales manager—Principal and agent—Debtor and creditor—Payment—Acceptance by sales manager of notes of third party as payment.*

3. Where a corporation has refused to accept from its debtor the obligations of a third person, but subsequently the sales manager of the corporation, without authority from his company, accepts such obligations, and gives a receipt for them "for payment of" the debtor's note, and the latter is informed by the sales manager at the time that he could not give him his note as it was in the possession of the treasurer of the company, who was absent, and that the treasurer would have to agree to the transaction, the debtor cannot claim in a proceeding against him on the note that the acceptance of the obligations of the third person involved an actual payment and discharge of his own personal obligation.

Argued Feb. 24, 1914. Appeal, No. 5, Feb. T., 1914, by plaintiff, from judgment of C. P. Union Co., March Term, 1913, No. 22, on verdict for defendant in case of D. B. Martin Company v. Samuel K. Strickler. Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Issue to determine whether a judgment entered on a judgment note had been paid. Before JOHNSON, P. J.

At the trial it appeared that on March 16, 1911, the defendant gave the plaintiff a judgment note for $1,288. The defendant claimed that he had paid ·this note by giving to the plaintiff three bankers' trust notes each for $500, which had been accepted in the discharge of his debt. Other facts appear by the opinion of the Superior Court.

When the defendant was on the stand he testified as follows:

"A. (Samuel K. Strickler) I went down to Philadelphia; I wrote to Mr. English and told him to meet me at the Windsor Hotel, and instead of his coming they sent Mr. Dumont, and I told Mr. English I would give

them three bankers' trust notes.   Q. Of what denomination?   A. Five hundred dollars each, $1,500.   Q. Tell the court and jury.    A. He said he could not agree on doing anything like that without seeing Mr. English, and if they would accept the bonds or trust notes, he would come up in a few days and would take them with him, and he came up to my place and he penned that receipt himself and signed it, and took the bonds with him,—he wrote the whole receipt himself.   Q. Defendant's exhibit No. 1, shown witness, is that the receipt to which you refer? A. That is the receipt."

Judge McClure: We now offer this receipt in evidence.

Mr. Linn: What is the purpose of the offer?

Judge McClure: To show payment of the note.

Mr. Linn: This is objected to as not evidence for the purpose offered, and immaterial and irrelevant.   The receipt on its face not showing that it is in full payment of the note, the presumption being that a receipt of this character is only collateral, that is, that something taken other than cash is collateral.   And further, that it has not been shown that H. T. Dumont had authority to sign a receipt in full settlement of the note for these bonds in question.

The Court: We will receive it for the present, so far as the receipt itself is concerned.   As to the question of authority, is there any testimony at all to show that Mr. Dumont had authority to sign the receipt?

Judge McClure: He had authority to settle with Mr. Strickler.

"Q. What was Mr. Dumont's business?   A. Sales manager for the fertilizer department of D. B. Martin Company.   Q. What was English?   A. I think he was assistant treasurer.

The Court: We will receive the receipt for the present. The objection is overruled, and the evidence admitted, to which ruling counsel for plaintiff excepts, and at his request an exception is noted, and bill sealed. [1].

Defendant's Exhibit No. 1

"Rec'd of Samuel K. Strickler three Bankers Trust Notes of $500.00 each for payment of note of $1288.00 (twelve Hundred &. Eighty Eight) dollars.

"D. B. MARTIN Co.
"per H. T. DUMONT."

The court charged in part as follows:

[There is still another question you will have to determine and that is whether the agent here, Mr. Dumont, had power to give a complete satisfaction in this matter. Now, you have heard all the testimony in this case as to his general power and authority. He was general sales agent of the plaintiff for fertilizers, and he met Mr. Strickler in Philadelphia, at the Windsor Hotel, to discuss this matter, and he was sent up here to Mifflinburg to see Mr. Strickler. Now it will be for you to determine from his testimony and all the testimony and correspondence with Dumont and Mr. English, and the company, what was the general authority, and what was the apparent authority of Mr. Dumont.

For an agent has the right to bind his principal, the person, or company, or corporation, or individual, for whom he is agent, in the general scope, or apparent scope of his employment; that is to say, other parties dealing with that agent have the right to assume, and act upon that assumption that the agent has the power to bind his principal which he appears to have, which are apparent, so that if it lay within the general authority of the agent, or within the apparent authority of this agent to give a receipt in full, by settling upon the basis upon which Mr. Strickler says he did, was within the scope of that authority, but if he did not have that authority, if it did not lie in the authority or the apparent authority of Mr. Dumont to give receipt for these bonds, in full payment of this note, then his act would not bind his principal. In other words, if the giving of this receipt in full for these bonds as evi-

dence of complete satisfaction of the note was within the scope of the authority of Mr. Dumont, or within the apparent authority of Mr. Dumont, then his acts bind his principal.   But, if it was not within the scope or apparent scope of Mr. Dumont's agency, then it would not bind the principal.   Now, I think you will understand that fully.] [2]

[On the face it is an absolute receipt because it says on its face, "Received of Samuel K. Strickler three Bankers Trust Notes of $500.00 each for payment of note of $1288.00. . . ."

Does it under all the testimony in this case amount to absolute payment?   Were these bonds given in absolute payment?   We say this receipt is prima facie evidence of payment, for it says on its face "for payment of note of $1,288.00."] [3]

Defendant presented this point:

3. The receipt dated October 7, 1911, given by Martin and Co. to Strickler for the three bankers trust notes of $500 each expressly states that they were "for payment of note of $1,288 (twelve hundred and eighty-eight) Dollars" and is stout evidence of the truth of the defendant's contention that these notes were taken in absolute payment of Strickler's note, and not as collateral security for the debt.   *Answer:* We affirm that point. [4]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (2–4) above instructions, quoting them.

*Philip B. Linn*, for appellant.—When a creditor receives from his debtor the note or check of the latter, or of a third person, on account of the pre-existing debt, such note or check is only collateral to the original indebtedness; that it is taken not as absolute but as conditional payment; that the debt will be extinguished only

if the collateral obligation be paid: Mechanics' National Bank v. Kielkopf, 22 Pa. Superior Ct. 129; First Natl. Bank of Gallitzin v. McNeelis, 37 Pa. Superior Ct. 88; Hummelstown Brownstone Co. v. Knerr, 25 Pa. Superior Ct. 465; Philadelphia to use v. Neill, 211 Pa. 353; Collins v. Busch, 191 Pa. 549; Shepherd v. Busch, 154 Pa. 149.

*Harold M. McClure*, with him *John A. Beard* and *David L. Glover*, for appellee.—The case was properly left to the jury: Shepherd v. Busch, 154 Pa. 149.

OPINION BY HEAD, J., July 15, 1914:

This was a feigned issue framed to try a single question of fact. The defendant does not deny he had become indebted to the plaintiff for merchandise sold and delivered to him in the sum of $1,288. He concedes he executed and delivered to the plaintiff company his judgment note with warrant of attorney in the sum named to secure its payment. After the plaintiff had held the note for a considerable period of time it caused judgment to be entered thereon. This was followed in a few days by the petition of the defendant praying for a rule to show cause why the judgment should not be opened and he permitted to defend on the single ground that he had made payment of the note in the manner hereinafter stated. The rule was made absolute and this issue framed for the purpose of determining that question.

The question at issue is further simplified because the defendant does not allege he paid the note in money or in any of the ordinary equivalents thereof. His whole case rests on the proposition that he gave to the plaintiff company three notes of a corporation known as Bankers' Trust Company, which notes the plaintiff agreed to receive and did receive in actual payment and discharge of his personal obligation. The testimony shows these notes were of practically no commercial

value. It further shows the defendant had bought one of them, of the face value of $500, just a few days before the transaction in question for the sum of $15.00. The defendant concedes that a few months before this transaction he had, in correspondence with the proper officers of the plaintiff, sought to induce the latter to accept some of these notes in payment of merchandise he then desired to buy, and that, after investigation as to the value of the obligations he proposed to exchange, the plaintiff declined to ship its goods and accept these notes in payment. On October 5, 1911, the defendant wrote to Mr. English, the assistant secretary of the plaintiff, with whom he had formerly corresponded, stating he had a good proposition to submit concerning his affairs; that he would be in Philadelphia on the following Friday, and asking at what time he could meet the officer named and the treasurer on Saturday. On the following day one Dumont, the sales manager of the plaintiff, replied he would meet the defendant at a certain hour on the day named. At that meeting the defendant testifies he offered to give to Mr. Dumont three bankers trust notes of the face value of $500 each, in payment of his own note of $1,288 and accrued interest, then held by the plaintiff. Also that the sales manager replied he could not make any such agreement without seeing Mr. English, but, if the company would accept the trust notes, he would come up in a few days and get them. Within a day or two the sales manager appeared at the place of business of the defendant at Mifflinburg, Pa., and there received from the defendant the three bankers trust notes referred to, for which he gave the following receipt:

"Rec'd of Samuel K. Strickler, three bankers trust notes of $500.00 each for payment of note of $1,288.00.

"(Signed) D. B. MARTIN Co.

"per H. T. DUMONT."

Dumont did not have with him the note of the defendant. His statement to the latter indicates that he per-

sonally had no access to or control over such paper. It further shows he had not at that time yet seen Mr. English because, according to the defendant's testimony, he stated that Mr. English was out of the city and he could not get into the safe, but would send the note back on the following Tuesday. It never was returned.

It is conceded by everybody, that, under the circumstances stated, the presumption of law would be these obligations of a third party were accepted by the plaintiff creditor only as a collateral or further security for the debt due to it. This presumption, however, is not a conclusive one and may be rebutted by evidence that the intention of both parties was they should be received and accepted in discharge of the debt already due and owing, and as an extinguishment of the obligation already held by the creditor to secure its payment. In such a case the burden is strongly on the debtor, and his allegation ought to be established by the clear weight of the credible evidence. The learned judge below recognized the principle just stated throughout the trial, but, as we view it, fell into error in the weight and significance which he attached to the receipt already quoted. He appears to have regarded it, and so stated to the jury in the charge and answers to points, as exhibiting an agreement "to accept the trust company's notes in absolute payment of the note in suit" and affirmed a point of the defendant stating the legal value of the receipt in the language just quoted.

We are by no means able to agree that the receipt, standing alone, can be properly so construed. It certainly contains no usual or apt language to express the idea that the plaintiff was accepting the new obligations in discharge of the debt due to it and in extinguishment of the note referred to. It would have required no professional or technical skill to have clearly expressed that idea. On the contrary, the receipt simply says these obligations were received "for payment of note of $1,288." What is the meaning of the expression

"for payment of note"?   Certainly the law attaches no such significance to that expression as to warrant the learned trial judge in saying that the receipt expressed an absolute agreement on the part of the plaintiff to discharge the defendant and surrender his obligation.   In commercial transactions the word "for" is frequently used as the equivalent of "on account of."   If it be thus regarded, it is quite clear the receipt would manifest a very different agreement from that indicated by the learned trial judge.   Or if the expression be so construed as to be the equivalent of the words "to be applied to," again the case would be clear.   These constructions—or other like ones that would readily occur—could be attached to the expression used in the receipt without doing any violence to the ordinary meaning of words; and such construction would be in harmony with the legal presumption instead of opposed to it.   We are of opinion the plaintiff suffered harm by the construction thus placed on the receipt by the learned trial judge, and we must accordingly sustain the third, fourth and fifth assignments of error.

The burden was also on the defendant to show that the individual with whom this transaction was effected had authority to bind his employer by an agreement to give up a portion of the corporate assets and accept the obligations of some third party with whom it had no dealings in their stead.   This burden was certainly not lessened by the conceded fact that the officers of the company had but a few months previously, after investigation made, declined to receive the same or similar obligations for merchandise the defendant desired to buy.   There is nothing in the title "sales manager" to hold out to the public that such an agent could handle, manage, control or exchange the financial assets of his principal.   There was nothing shown by the evidence to indicate that he had ever before attempted such a transaction with the knowledge or subsequent approval of his principal.   In a word, there was no evidence upon

which to predicate that such an act was within the apparent scope of the agent's authority, whilst all of the evidence precludes any claim that he had any actual authority to bind his company by such an agreement. The defendant admits he was previously told by this very agent he had no such authority and would first have to see Mr. English. He was further told, according to his own statement, at the very moment of the transaction, that the agent did not have his note and could not deliver it because he had no access to the safe in the absence of Mr. English, and therefore could not deliver the note until the return of the latter to his office. If the transaction were as the defendant contended, there was no occasion for any receipt at all. The delivery of the trust company notes on the one hand, the cancellation and surrender of his own note on the other, would have completed the transaction. But if, as the plaintiff contends, the defendant was seeking indulgence in the collection of the debt he owed, and was placing in the hands of his creditor some additional security for his debt, then of course a receipt for the latter, indicating the object for which these additional securities were given, would be but the usual and ordinary conduct of business men. As the evidence stands in the record before us, we are unable to say the defendant has discharged the burden cast upon him by the law and presented evidence to the jury to fairly support a finding that Dumont had any authority to bind his principal by a transaction of the character set up by the defendant.

As the assignments of error, however, disclose no point for a binding direction to the jury and no motion for judgment non obstante veredicto, there remains nothing for us to do but send the case back for another trial in accordance with the principles laid down in this opinion.

Judgment reversed and a venire facias de novo awarded.