# Holliday *v.* Potter et al.

*Negotiable instruments — Innocent purchases for value — Additional execution.*

A judgment creditor of the payee of a promissory note cannot get judgment against the maker, as garnishee, on an attachment execution, if the note is in the hands of a bona fide holder for value who discounted the instrument without notice of the attachment.

A draft of a corporation on its treasurer has the effect of a promissory note of a corporation and a bank which discounts the note, for value without notice, is a holder in due course. An attachment execution issued after the draft came into the possession of the innocent party, is ineffective, as the grasp of the attachment never fastened upon the instrument.

Submitted October 3, 1922. Appeal, No. 52, April T., 1922, by garnishee, from judgment of C. P. Mercer County, Jan. T., 1917, No. 35, on judgment for plaintiff on attachment execution in the case of John W. Holliday, executor of George W. Reher, deceased, v. Nora E. Potter and Benjamin E. Potter, defendants, and the Neshannock Mutual Fire Insurance Company of Mercer County, Pennsylvania, garnishee, and the Mercer County Trust Company of Mercer, garnishee. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Attachment execution. Before McLAUGHRY, P. J.

The facts are stated in the opinion of the Superior Court.

The court entered judgment in favor of the plaintiff and against the garnishee for the amount in the hands of the garnishee belonging to and owing Nora E. Potter and Benjamin E. Potter.

The Neshannock Mutual Fire Insurance Company, garnishee, appealed.

# HOLLIDAY *v.* POTTER et al. 195

194, (1922).]    Arguments—Opinion of the Court.

T. C. *Cochran,* for appellant.

W. J. *Whieldon* and *Martin & Martin,* for appellee.

Opinion by Gawthrop, J., November 23, 1922:

The proceeding we are now about to review was an attachment execution. Nora E. Potter and Benjamin E. Potter had insured their buildings with the Neshannock Mutual Fire Insurance Company, hereinafter called Insurance Company. These buildings were burned. The Insurance Company adjusted the loss on October 16, 1916, and gave the Potters an order in the following form:

"$552.16                         Mercer, Pa., Oct. 16, 1916.

"J. L. Steen, Treasurer of the Neshannock Mutual Fire Insurance Company.

"Pay to Benj. E. Potter and wife or order five hundred fifty-two and 16/100 dollars for total loss of house and barn by fire.

"Payable at Mercer County Trust Co., Mercer, Pa.
"No. 94                          "Due Nov. 25, 1916.
                                "S. B. Montgomery, Pres.
                                "W. A. Munnell, Sec.
"Indorsed,
    "Benj. E. Potter,
    "Nora A. Potter."

On October 26, 1916, the Potters endorsed and delivered said instrument to the First National Bank of Grove City and received from said bank the full value thereof. On November 9, 1916, plaintiff, who held a judgment against the Potters, issued an attachment execution thereon, which attachment was served on the Insurance Company and the Mercer County Trust Company. Interrogatories were filed by plaintiff, and the garnishees were ruled to answer. The answer of the Insurance Company averred, in addition to the above facts, that said order was and is a negotiable instru-

ment, and that when the First National Bank of Grove City became the holder thereof, the garnishee owed the amount thereof to the bank and not to said defendants; that when the order became due by its terms, it was presented for payment at the Mercer County Trust Company, which company refused payment because payment had been stopped, whereupon the First National Bank of Grove City caused it to be protested and all parties thereto notified.

There is but one question presented by the record. Did the answer of the garnishee warrant the court below in entering judgment for the amount of the order? Although the instrument was in form an inland bill of exchange, it was in fact an order by the drawer on itself. This constituted it a mere promise to pay. The holder could treat it as a promissory note. See section 130 of the Negotiable Instruments Act of May 16, 1901, P. L. 194. An order drawn by a corporation on its treasurer is generally regarded as having the effect of a promissory note of the corporation: 10 Cyc. 1023. It is well settled in this State that a promissory note not due is liable to attachment under the Act of June 16, 1836, P. L. 767, but the attachment is unavailing against a bona fide holder or endorsee for value before maturity without actual notice of the attachment, even though the attachment preceded the endorsement. The negotiable character of the note is not destroyed by the service of an attachment upon the maker, at suit of a creditor of the payee; and the rights of a bona fide holder for value, who takes title without actual notice of the attachment, must prevail against those of the attaching creditor: Kieffer v. Ehler, 18 Pa. 388; Hill v. Kroft, 29 Pa. 186; Day v. Zimmerman, 68 Pa. 72, and Bell v. Binding & Mailing Company, 10 Pa. Superior Ct. 38. The reason for the rule has never been stated more forcibly and clearly than it was by Mr. Justice Lowrie in Kieffer v. Ehler, supra, when speaking with regard to promissory notes, he said: "They have a legal quality that renders

the hold of an attachment upon them very uncertain. Unlike all other property, they carry their whole evidence of title on their face; and the law assures the right to him who obtains them for valuable consideration, by regular endorsement, and without actual notice of any adverse claim, or of such suspicious circumstances as should lead to inquiry. To hold that an attachment prevents a subsequent bona fide endorsee for value from acquiring a good title, would be almost a destruction of one of the essential characteristics of negotiable paper......Moreover, it would present the strange result, that the more hands that such paper had passed through, and the more endorsers there were on it, the less it would be worth in the money market; for it would be subject to the more risks of attachment." It is equally well settled that a check is a debt due in the sense of the law and may be attached under the same act: Fulweiler v. Hughes, 17 Pa. 440. That case was a feigned issue to determine whether Hughes, the defendant, was a bona fide holder for value of a check of Orrick and Campbell in favor of E. Jackson & Company on the Bank of Penn Township for $702.50. E. Jackson & Company were iron masters who had dealt with Orrick and Campbell of the City of Philadelphia. On September 10, 1846, E. Jackson obtained the above-mentioned check. On September 15, 1846, Culberson and Fulweiler entered a judgment against E. Jackson & Company in Philadelphia County, and on the same day an attachment execution was issued upon it, and served on Orrick and Campbell as garnishees. On September 25, 1846, the check was presented at the Bank of Penn Township and payment was refused. It was endorsed E. Jackson & Company,—Joseph Hughes. It was claimed by Hughes, who sued Orrick and Campbell, and a feigned issue was ordered to determine whether Hughes was a bona fide holder of the check for value. The evidence being uncontradicted that Hughes bought the check for value and without notice of any infirmity,

a verdict was directed for him. Speaking for the Supreme Court, Mr. Justice LOWRIE said: "A party may, with perfect safety, purchase a negotiable instrument, if it is all fair upon its face, unless he has actual notice of a defect in the holder's title, or it is offered under suspicious circumstances......For the giving of the paper is a declaration of intention that it may be put into free circulation for the benefit of the payee." It is therefore wholly immaterial whether we treat the order in this case as a promissory note or a bill of exchange because the rule is the same in either case. When the First National Bank of Grove City bought the order, it became a holder in due course of a negotiable instrument. At that time the attachment had not issued. The Insurance Company at that moment became liable to pay the bank the amount called for in the instrument. Therefore the grasp of the attachment never fastened upon the instrument or any fund of the Potters located in the hands of the garnishees. To permit the judgment entered against the Insurance Company to stand would result in requiring it to pay the order twice, a consequence which would not only work an injustice, but also would be contrary to the law as declared by our Supreme and Superior Courts. Rockwell v. Silvara, 45 Pa. Superior Ct. 505, which has been cited by the appellee as authority justifying the action of the court below is not in conflict with the conclusion here reached. In that case the contest for the possession of the fund was between an attaching creditor of the payee of a check and the endorsee of the check. The attachment was issued and served on the garnishees before the endorsee bought the check. Therefore the attachment would prevail as against the endorsee, unless at the time the endorsee bought the check it had no knowledge of the attachment and no knowledge of such facts that its action in taking the instrument amounted to bad faith. In the report of the case the fact that the endorsee did not have such knowledge does not appear. For that rea-

194, (1922).]        Opinion of the Court.

son the rights of a holder in due course of a negotiable instrument were not involved, and the case is clearly distinguishable from our case on its facts. We must conclude therefore that the averments in the answer of the Insurance Company constitute a good and valid defense to the attachment and that the learned court below fell into error in permitting the attachment to prevail and in entering judgment against the Insurance Company, garnishee.

The judgment is reversed and here entered for the Neshannock Mutual Fire Insurance Company.