Joseph Melnick Building & Loan Association *v.*
Melnick et al. (First Penny Savings
Bank, Appellant).

Argued January 15, 1935. Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*J. B. Colahan,* of *Townsend, Elliott & Munson,* for appellant.

*Sylvan H. Hirsch,* with him *Joseph First,* of *Sundheim, Folz & Sundheim,* for appellee.

OPINION BY MR. JUSTICE LINN, March 25, 1935:

What was said at some length in Aarons v. Public Service Building & Loan Association, defendant, and Integrity Trust Company, garnishee, 318 Pa. 113, on a judgment creditor's right under the Act of June 16, 1836, P. L. 755, to execution against deposits of money and debts, is in part applicable to this appeal. That statute defines the right with express limitations. The writ of attachment is, in effect, a suit against the garnishee bank by the defendant-depositor to the use of the attaching plaintiff. If the bank has any defense to the depositor's claim, it may be asserted against the attaching plaintiff.

What are the facts? Helen Melnick was a depositor in the garnishee bank. At or about 12 o'clock, May 13, 1929, she demanded payment of $8,000 out of her deposit of $8,007.87. The bank paid it by its check, signed by two officers, one, vice-president, and the other, treasurer. The check was drawn on an account maintained with another bank, The Pennsylvania Company for Insurances, etc., more than sufficient to pay the check. As a condition of receiving it, and when it was received, she signed on the back of it, inter alia, the following: "Endorsed and accepted as payment of withdrawal from account

number 143046. . . ." She also signed and delivered another receipt stating that she "Received from [the garnishee] eight thousand dollars." The check was honored two days later by payment in due course through the clearing house. At two o'clock, May 13th, a writ of attachment was served on the garnishee bank. When those facts appeared, the learned trial judge directed a verdict for the attaching creditor. The bank's motion for judgment n. o. v. was refused and, after judgment was entered on the verdict, this appeal followed.

In Roig v. Tim, 103 Pa. 115, 117, we said: "The service of an attachment execution has the effect of an equitable assignment of the thing attached. It puts the garnishee in the relation to the attaching creditor which he had sustained to his former creditor. He may make the same defense to the attachment by evidence of set-off or of other equities that he might have made if sued by his original creditor."

If we apply that to this record, the writ of attachment, served at two o'clock, had "the effect of an equitable assignment of the thing attached"; it put "the garnishee in the relation to the attaching creditor which he [the bank] had sustained to" its depositor. But, when the writ came in, the deposit had been reduced to $7.87 by the withdrawal. Prima facie, at least, the small remaining balance was all that the statute could equitably assign. If, at two o'clock the depositor had brought suit, her withdrawal at 12 o'clock would have been a defense to her demand as to $8,000.

Appellant contends that the evidence shows that the depositor accepted the bank's check in complete discharge of so much of the debt, and not as conditional payment; that, by giving the receipt quoted above, and by agreeing also that she received the check "as payment of withdrawal," the bank made, and she accepted, an equitable assignment of the funds in the drawee bank (see Fourth Street Nat. Bank v. Yardley, 165 U. S. 634, 644 et seq.). On the other hand, the appellee, the at-

taching creditor, contends that the check and the writings signed by the depositor did not operate as an equitable assignment* of the funds with the Pennsylvania Company; that the check was a conditional payment only (see McIntyre v. Kennedy, 29 Pa. 448; Shepherd v. Busch, 154 Pa. 149, 26 A. 363; Tibby Bros. Glass Co. v. F. & M. Bank, 220 Pa. 1, 69 A. 280; Martin v. Strickler, 57 Pa. Superior Ct. 296), and that the bank was still the defendant's debtor in an amount including the $8,000 when the attachment was served.

It is unnecessary to determine whether appellant's contention can be maintained, because we all agree that, even on appellee's theory of conditional payment, the writ takes no part of the $8,000, because the check was paid in due course. This will appear from analysis of the transaction in the light of well settled rules.

The depositor and the bank by agreement had reduced the drawing account to $7.87. The defendant could no longer draw against the $8,000. The bank was released from the obligation to honor her drafts for that sum. A novation was effected; the bank executed its negotiable instrument and she received it in discharge of the former contract. After the novation, the only liability of the garnishee to the former depositor (as to the $8,000) was contingent, depending on what happened when the check was presented for payment. The writ went against that liability, whatever it was, and against the admitted balance not withdrawn; if the check was honored, the writ took only the small balance remaining. We are dealing with a negotiable instrument. Such instruments "have a legal quality that renders the hold of an attachment upon them very uncertain": Kieffer v. Ehler, 18 Pa. 388, 391.

---

* Section 189 of the Negotiable Instruments Law, May 16, 1901, P. L. 194, "A check, of itself, does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check."

124

"The law is well settled, that a promissory note is liable to be attached before maturity in the hands of the maker at the suit of a creditor of the payee. Though not due, it is a debt within the meaning of the Attachment Laws, and, therefore, as between the payee and attaching creditor, it is bound by the service of the attachment on the maker; and if, after being attached, it remains in the hands of the payee until maturity, it is bound by the attachment as against all persons into whose hands it may thereafter come. But the attachment is unavailing as against a bona fide holder, or endorsee for value, to whom it has been transferred, before maturity, without actual notice of the attachment. The doctrine of notice by *lis pendens* is not applicable to such a case: Kieffer v. Ehler, 18 Pa. 388; Hill v. Kroft, 29 Pa. 186; and therefore, a subsequent holder is not affected with constructive notice of the attachment": Day v. Zimmerman, 68 Pa. 72, 74. The attachment does not make negotiation to a holder in due course impossible: Ludlow v. Bingham, 4 Dallas 47; Kieffer v. Ehler, supra; Day v. Zimmerman, supra; Bell v. Binding & Mailing Co., 10 Pa. Superior Ct. 38; Holliday v. Porter, 80 Pa. Superior Ct. 194; N. I. L., section 57. These cases involved notes—direct obligations of the garnished makers—which had a maturity date. A check is a bill of exchange drawn on a bank payable on demand (N. I. L., section 185), but without a fixed date of maturity determining the time after which one may not become a holder in due course. Fulweiler v. Hughes, 17 Pa. 440, deals with the garnishment of the drawer of a check on which payment had been refused (N. I. L., section 61). The money was paid into court, where the issue was between the holder and the attaching creditor. It was a post-dated check, negotiated for value without notice before due, and it was held that, notwithstanding the attachment, the holder in due course could enforce the check.

The attachment in this case never seized any part of the $8,000 represented by the check. Liability on a nego-

tiable instrument is bound by attachment of the obligor, only if "it remains in the hands of the payee [or one not a holder in due course] until maturity." Obviously, service of a writ on the obligor does not prevent negotiation (N. I. L., section 30; see Kieffer v. Ehler, supra, at 391). Nothwithstanding a writ of attachment, an endorsee, before maturity, or, in case of a demand obligation, within a reasonable time (N. I. L., section 53), may, therefore, become a holder in due course (N. I. L., section 52 and cases supra). The writ does not change the character of the instrument. In this case, during the period in which the check could be negotiated to a holder in due course, it was discharged, and, therefore, never came within the grasp of the attachment.

Appellee suggests that the garnishee should have stopped payment. But, as long as the check was out of its control, stopping payment would not have prevented negotiation (N. I. L., section 30). It might still go on, and, during a reasonable time (N. I. L., section 53), an endorsee might become a holder in due course (N. I. L., section 52 (2)). The Attachment Act did not increase the obligation of the garnishee; the effect of the attachment was simply to assign the defendant's rights to the plaintiff. The garnishee was not required to violate its engagement that the check would be honored in due course, or to change the nature of its obligation to the payee (N. I. L., section 61). When the writ was served, the garnishee would become liable to the defendant only if its negotiable instrument was dishonored. The check was not dishonored. The contingency did not occur, so there was no debt which the writ could grasp. Before it became an attachable debt, the liability was discharged by payment in due course by the drawee. The garnishee could rely on the negotiable character of the instrument. The statute preserved all defenses good against the defendant-payee; one was payment in due course by the drawee (who was not attached). Rockwell v. Silvara, 45 Pa. Superior Ct. 505, and Catanzaro v. Hellman Com.

Trust and Savings Bank, 281 Pa. 468, 126 A. 812, cited by appellee, are not controlling; in both cases, all parties joined in paying the money into court and eliminated the garnishee from the legal problem (Riley v. Wirth, 313 Pa. 362, 169 A. 139, and cases cited, page 366). The question now raised did not require consideration.

The assignments of error, relating to the sum of $8,000 in question, are sustained. As there seems to be a small balance to the credit of the depositor, we must remit the record with instructions to correct the amount of the judgment accordingly.