Mignatti, Appellant, *v.* General Mortgage
Financing Corporation et al.

Argued November 30, 1936.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Thomas E. Comber,* for appellant.

*P. Nicholson Wood,* with him *Shields, Clark, Brown
& McCown,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, January 11, 1937:
This is an attachment execution.  The trial judge gave
binding instructions for the garnishee.   From the judg-
ment entered in its favor plaintiff appeals.

If all the facts referred to by appellant are recited, the case would seem a quite complicated one. We think it can be so outlined as to appear simple when viewed with the controlling principles of law in mind.

Mignatti, the plaintiff, was the owner of a tract of land which he desired to develop by building houses. He applied to the General Mortgage Financing Corporation, the defendant, for a mortgage loan to enable him to carry out his project. The corporation undertook to provide him with funds to the amount of $378,000 and he executed a mortgage to it in that amount. In turn the Financing Corporation obtained a loan from the Integrity Trust Company, the garnishee, of $247,000, giving its note to the Trust Company for that sum with the mortgage pledged as collateral. The money from the loan was to be advanced by the Trust Company direct to Mignatti as he required it and the Trust Company undertook to guarantee the completion of the buildings and to insure the title of the purchasers thereof. In pursuance of the building agreement between Mignatti and the Trust Company, he conveyed the property subject to the $378,000 mortgage to George A. Kilian in trust for certain purposes, ultimately for the benefit of himself. Kilian thereafter deeded the property to Anna Schaeffer, a straw person. In consideration of the release from the lien of the $378,000 mortgage of one of the houses, No. 5900 Frontenac Street, which had been built, Anna Schaeffer executed a mortgage to the Trust Company for $10,000. Thereafter she conveyed the entire tract to James C. Whelan subject, so far as the one house and lot No. 5900 Frontenac Street was concerned, to the $10,000 mortgage. Whelan later conveyed this house and lot to David C. Carter, a straw man, subject to the $10,000 mortgage. While the title to the property was thus held, Mignatti recovered a judgment against the defendant in this proceeding for $12,227.24 and issued the attachment execution with which we are now dealing and summoned the Integrity Trust Company as

garnishee. When the attachment was served on the garnishee, June 24, 1930, all but $6,000 of the $247,000 indebtedness due the Trust Company by the defendant had been paid and the $378,000 mortgage had been satisfied. On July 21, 1930, Carter conveyed the premises No. 5900 Frontenac Street to Stanley E. Walters and Robert E. Walker, Jr., clear of incumbrances for a consideration of $12,398.77. This sum was paid to the Trust Company for the purpose of settlement. Out of the sum so deposited, it retained the balance due on the $10,000 mortgage amounting to $6,084, the settlement and title insurance costs, and paid to Carter, the grantor, the net balance of $5,918.21. Upon completion of the transaction, the Trust Company satisfied the $10,000 mortgage.

Mignatti claims that out of the sum of $5,918.21 paid by the Trust Company to Carter, $3,916, the balance due on the $10,000 mortgage after deduction of the amount owing to the Trust Company, $6,084 was bound by an attachment. It is impossible to see how this could be so. The money realized from the sale of the property belonged either to Carter, who was the record owner, or to the person for whom he held title, who must have been Mignatti, who owned the land in the first instance, who built the houses thereon and who, under the agreement with the Trust Company, was entitled to such sum as remained after discharging all claims. The defendant, the Mortgage Finance Corporation, never had title to the property and has no interest in it except as mortgagee in the $378,000 mortgage which has been satisfied. Its entire liability to the Trust Company on the $247,000 note had been wiped out when the Trust Company received the $6,084. There is no evidence whatever that Carter was acting in defendant's behalf.

The plaintiff in this action could recover only if the money in the Trust Company's hands belonged to the defendant. If for any reason the Trust Company should have accounted and paid over the balance in its hands to Mignatti instead of to Carter, the former cannot re-

cover it in this form of action. As was said by the learned judge of the court below in his opinion: "Of course if the surplus funds belonged to the plaintiff and not to the defendant, as it is evident . . . that it did, and as it is evident from the express agreement between the plaintiff and the garnishee in the building contract . . ., in which the garnishee agreed that its nominee should take title in trust for the uses therein specified, and any surplus should be paid over to the plaintiff, then the plaintiff would be compelled to reach these funds by a direct suit against the garnishee and could not reach them by attachment."

In his usual clear and able way, Judge Keller of the Superior Court stated the legal principles which govern this controversy in *Fisher v. McFarland,* 110 Pa. Superior Ct. 184, 186, 167 A. 377, from whom we quote: "The principle at the base of an attachment execution is that the garnishee owes money to the judgment debtor, or has in his possession money or property, belonging to the latter, which he (the judgment debtor) has a legal right to require the garnishee to pay him, except for the attachment. . . . If the garnishee owes the judgment debtor nothing or has in his possession no money or property belonging to the latter, the attachment falls: *Austin-Nichols & Co., Inc., v. Union Trust Co.,* 289 Pa. 341, 346, 137 Atl. 461. Hence it is wholly inconsistent for the plaintiff in the attachment to set up in that proceeding a claim that by virtue of some notice to and demand upon the garnishee, wholly apart from the attachment, the garnishee thereafter was not indebted, as a tenant, to the judgment debtor, but became indebted directly to the judgment creditor, the plaintiff in the attachment. Such a claim negatives the very principle at the root of the attachment, viz., that the garnishee owes the money to the judgment debtor and that the plaintiff in the attachment seeks by that process to recover it as the property of the judgment debtor. In an attachment execution the plaintiff stands in the shoes of the judg-

ment debtor and can only claim from the garnishee such money, etc., as the garnishee owes the judgment debtor. If by reason of other matters the plaintiff in the attachment execution acquires a right to demand of the garnishee that moneys formerly payable to the judgment debtor must thereafter be paid to him, the plaintiff, directly, in his own right, as mortgagee, and not by virtue of his succession under the attachment to the judgment debtor's rights, he must proceed by some direct process with that end in view and not by an attachment execution against the judgment debtor, which is based on the premise that the garnishee owes the money to the judgment debtor and to no one else."

The judgment is affirmed.