## DeShong v. Cody

Before CERCONE and PRICE, JJ.

*D. Malcolm Anderson,* and *Griggs, Moreland, Blair & Douglass,* for plaintiffs.

*Allen N. Brunwasser,* for defendant.

CERCONE, J., July 27, 1964.—This action comes before the court on preliminary objections to two writs of attachment sur judgment issued January 29, 1960, against A. B. Weingard and R. F. Weingard as garnishees of money due debtor under an agreement of sale, and of shares of stock, certificates of indebtedness, evidence of ownership, notes, open accounts and collateral accounts payable, owned by the judgment debtor, Lewis W. Cody. On February 15, 1960, defendant, Cody, filed preliminary objections, contending that the property attached is immune and exempt from attachment. On March 2, 1961, plaintiff praeciped the case for issue. The matter remained dormant until December 13, 1963, when plaintiff again praeciped the case for issue and argument was heard.

It is a long-established principle that all the assets of a debtor, not specifically exempted by statute, are liable for the payment of his debts. Attachment execution under the Act of June 16, 1836, P. L. 755, was a process designed to reach property in satisfaction of the judgment which could not be reached by the usual and ordinary execution processes: Sophia Wilkes Building and Loan Association v. Rudloff, 348 Pa. 477 (1944). It was especially designed to reach a debt owed to the judgment debtor by a third person who was in the position of a garnishee: Mignatti v. General Mortgage Financing Corp., 325 Pa. 113 (1937). The present attachment execution, originating in 1957, is governed by the Act of June 16, 1836, which provides in section 35:

"In the case of a debt due to the defendant, or of a deposit of money made by him, or of goods or chattels

pawned, pledged or demised as aforesaid, the same may be attached and levied in satisfaction of the judgment, in the manner allowed in the case of a foreign attachment . . ."

The first question to be determined is whether money due under an agreement of sale is subject to attachment execution as a debt due. In Morris & Co. v. Adamson, 83 Pitts. L. J. 93 (1935), a claim for unpaid purchase money for property sold to the garnishee was specifically held to be subject to attachment execution. A similar situation is present here. The judgment creditor seeks to attach the unpaid purchase price under an agreement of sale between the judgment debtor, Cody, as vendor, and the garnishees, the Weingards, as vendees. Furthermore, it has long been the rule that the interest of a vendor of real estate to the extent of the unpaid purchase money is subject to levy and sale under an execution against him: Foster's Appeal, 3 Pa. 79 (1846) ; Stewart v. Coder, 11 Pa. 90 (1849).

The second issue raised by petitioner is whether certain notes and accounts, being in the nature of unliquidated claims, are subject to attachment execution. While it is true that unliquidated claims in tort cannot be the subject of attachment execution, this limitation has not been applied to claims or obligations which arise from a contract, express or implied. Thus, advances due under the terms of a building contract, although the building was not completed, were attached (Kelly v. Snyder, 5 W. N. C. 39 (1878)), and in Sweeny v. Allen, 1 Pa. 380 (1845), a debt was attached even while it was then in suit. The fact that the claim is unadjusted and unliquidated does not preclude attachment execution: Pisani v. Lazzaro, 11 Northumb. 134 (1932). Obligations due out of contract and obligations represented by promissory notes may be attached (Kieffer v. Ehler, 18 Pa. 388 (1851)), even

though not payable at the time of the attachment: Holliday v. Potter, 80 Pa. Superior Ct. 194 (1922).

Petitioner contends that corporate stock is not subject to attachment. While, at common law, execution could not be levied on shares of stock, the Act of June 16, 1836, and attachment execution procedures were available: Adkins v. Poth, 286 Pa. 555 (1926). The Uniform Stock Transfer Act of May 5, 1911, P. L. 126, modified the right to attachment execution and provided that shares of stock could be attached only if the shares were actually seized or their transfer enjoined. The Uniform Commercial Code carried forward these provisions but provided that the stock, to be effectively attached, must actually be seized. This act controls the present case and the attempted attachment of the stock of Mt. Royal Cemetery was ineffective. The levy is not valid until such shares are actually seized.

The provisions of the Uniform Commercial Code of April 6, 1953, P. L. 3, sec. 8-317, relating to attachment of securities, are also applicable to evidences of indebtedness and certificates or instruments representing, or securing an interest in, the capital assets or property of any company. Thus, the certificates of indebtedness and evidences of ownership insofar as they represent interests in capital assets must, to be effectively attached, be actually seized.

While it is the holding of this court that the attempted attachment execution on the corporate stock was invalid under the limitations imposed by the Uniform Commercial Code, 12A PS §8-317, the attachment execution may not be dissolved where it does not appear of record that the only property of defendant in the hands of the garnishee comprised shares of stock: Bateh v. Shihadeh, 21 D. & C. 70 (1934), decided under the Uniform Stock Transfer Act. In the present case, it does not so appear and the attachment execution must remain effective as to all property subject to the attachment.

Petitioner also contended that the attachment should be dissolved for failure of plaintiff to prosecute the matter with due diligence. The dissolution of an attachment for lack of diligence is within the discretion of the court and dependent upon the circumstances of the case: Watson & Co. v. Christ, 15 Schuyl. 292. While it is unfortunate that a cause should remain unresolved for such a period of time, it would appear that defendant filed his preliminary objections within one month following the attachment; that plaintiff praeciped the argument for issue March 2, 1961, and that the argument was postponed on request of defendant's attorney. In Gilmore v. Alexander, 268 Pa. 415 (1920), the court had before it a 24-year-old attachment execution. Appellant argued that the failure of plaintiff to prosecute the attachment execution with due diligence required a binding instruction from the court. In denying this argument, the Supreme Court of Pennsylvania said, page 424:

"There is no merit in the suggestion that the execution attachment had failed by reason of plaintiff's laches. The statute does not limit the duration of the lien of such writ . . . and the delay in prosecuting the same was fully accounted for."

In the present case, the garnishees have not objected to the attachment and the delay appears to have been caused in large part by defendant, who does not appear to have been prejudiced in any way by the delay.

ORDER OF COURT

And now, to wit, July 27, 1964, upon consideration of the preliminary objections filed by defendant in the within stated cases, and after oral argument and the submission of briefs thereon, it is hereby ordered and decreed that the said preliminary objections be dismissed as to all property attached, with the exception of any stocks, certificates of indebtedness or evidence of ownership in capital assets; and it is further ordered

that any such stocks, certificates of indebtedness or evidence of ownership in the capital assets of any company are released from the above attachment execution.